IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ORBCOMM INC.,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )      Civil Action No.:  3:16CV208–HEH
                                       )
CALAMP CORP.,                          )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION
### (Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6))

This is a patent infringement action involving what appears from the face of the Complaint, and attached exhibits,[1] to be a series of machine-to-machine communication platforms designed for tracking and monitoring the location and status of widely dispersed fleet vehicles and related mobile assets. The lawsuit consists of five separate but interrelated patents. These specific patents-in-suit include the following:

1.      U.S. Patent No. 6,292,724 ("the '724 patent") (entitled "Method Of And System And Apparatus For Remotely Monitoring The Location, Status, Utilization And Condition Of Widely Geographically [Dispersed] Fleets of Vehicular Construction Equipment And The Like And Providing And Displaying Such Information") (Compl. ¶ 21, ECF No. 1);

---

[1] In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint or incorporated by reference. *Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004).

2.     U.S. Patent No. 6,611,686 ("the '686 Patent") (entitled "Tracking Control And Logistics System And Method") (Compl. ¶ 27);

3.     U.S. Patent No. 6,651,001 ("the '001 Patent") (entitled "Method Of And System And Apparatus For Integrating Maintenance Vehicle And Service Personnel Tracking Information With The Remote Monitoring Of The Location, Status, Utilization And Condition Of Widely Geographically Dispersed Fleets Of Vehicular Construction Equipment And The Like To Be Maintained, And Providing And Displaying Together Both Construction And Maintenance Vehicle Information") (Compl. ¶ 38);

4.     U.S. Patent No. 6,735,150 ("the '150 Patent") (entitled "Method Of And Apparatus For Distinguishing Engine Idling And Working Hours") (Compl. ¶ 43);

5.     U.S. Patent No. 8,855,626 ("the '626 Patent") (entitled "Wireless Control For Creation Of, And Command Response To, Standard Freight Shipment Messages") (Compl. ¶ 51).

The matter is presently before the Court on Defendant CalAmp Corp.'s Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 16). Defendant CalAmp Corp. ("CalAmp") challenges the sufficiency of the Complaint on two fronts. First, CalAmp alleges that the patents-in-suit are abstract ideas ineligible as a matter of law to be patented. Secondly, CalAmp maintains that the Complaint fails to state a plausible claim of patent infringement. Both parties have filed memoranda of law and supplemental authorities outlining their respective positions.

At this stage of the proceedings, the Court's analysis is informed and constrained by the four corners of the Complaint and attached exhibits. As required by Fed. R. Civ.

2

P. 12(b)(6), the Court assumes that Plaintiff's well-pleaded allegations are true and is required to review all facts in the light most favorable to Orbcomm, Inc. ("Orbcomm"). *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Because the task at hand involves a pre-claim construction black letter review of the Complaint and patents-in-suit, oral argument would not aid in the decisional process at this stage.

Despite their atypical complexity, motions to dismiss patent infringement complaints are governed by the same well-recognized standards employed in any other civil case. As the United States Court of Appeals for the Fourth Circuit explained in *Republican Party of N.C. v. Martin*, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." 980 F.2d 943, 952 (4th Cir. 1992). The Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely conceivable. *Id.*

3

While a reviewing court must consider the well-pleaded allegations as true and view the complaint in the light most favorable to Plaintiff, legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, before turning to the sufficiency of the Complaint, CalAmp urges the Court to find the patents-in-suit to be conceptually ineligible under 35 U.S.C. § 101. Such motions are appropriate at the Rule 12(b)(6) stage. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Challenges to the validity of a patent face a high hurdle. Noting nearly a century of seamless jurisprudence, the United States Supreme Court in *Microsoft v. i4i Limited Partnership* stated that "there is a presumption of [patent] validity [that is] not to be overthrown except by clear and cogent evidence." 564 U.S. 91, 101 (2011) (citations omitted).

CalAmp maintains that the patents at issue involve abstract ideas such as gathering, storing, processing, formatting, and transmitting data. According to CalAmp, Orbcomm attempts to patent this ineligible subject matter by merely adding conventional sensors, computers, and network equipment. Succinctly, CalAmp contends that the patents involved in this litigation are merely attempts to patent ineligible subject matter, namely abstract ideas, through ineligible means, namely adding a generic computer.

According to CalAmp, "[n]one of Orbcomm's claims focuses on improving GPS technology or on the chips inside the GPS receivers; they merely use the GPS receiver as a black-box generic device to implement the claimed abstract ideas." (Def.'s Reply

4

Mem. Supp. Mot. Dismiss at 7, ECF No. 22.) Therefore, CalAmp seeks invalidation of all five patents based on a facial challenge to the patents and accompanying Complaint.

To support their claim that the patents-in-suit are simply abstract ideas built on conventional technology, CalAmp relies on *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). Section 101 of the Patent Act describes the subject matter eligible for patent protection. It provides: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id.* at 2354 (citing 35 U.S.C. § 101).

The Supreme Court in *Alice* explained that Section 101 had "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Id.* (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). It noted that "[l]aws of nature, natural phenomena, and abstract ideas are 'the basic tools of scientific and technological work.'" *Alice*, 134 S. Ct. at 2354 (citing *Myriad*, 133 S. Ct. at 2116).

The Court further counseled in *Alice* that "[m]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Alice*, 134 S. Ct. at 2354 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)). The Court in *Alice*, however, dispensed with the notion that a patent is rendered ineligible "simply because it involves an abstract concept." *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). "[A]pplication[s] of such concepts 'to a new and useful end,' we have said, remain eligible for patent

5

protection." *Alice*, 134 S. Ct. at 2348 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

The Supreme Court in *Mayo* articulated the appropriate analytical framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent eligible concepts. If so, we then ask, what else is there in the claims before us?" *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1297) (internal quotation marks omitted).

In *Mayo*, the Court described the second step of the analysis as a search for an "inventive concept"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." 132 S. Ct. at 1294 (citations omitted). "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 2016 WL 3514158 at *6 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2355). As to each of the patents in question, Orbcomm supports patentability by identifying arguably innovative elements to conventional systems. With these guiding principles in hand, the Court will turn to the eligibility of the patents-in-suit for protection under Section 101 of the Patent Act.

In essence, the '724 patent teaches a method for monitoring the location and status of fleets of vehicular construction equipment. It envisions the transmission of information concerning the location, utilization, status, and condition of vehicular

6

equipment through a transponder-satellite communications link system to a ground station via the Internet to an information-processing center.   According to CalAmp, this process entails "nothing more than the abstract idea of gathering, storing, processing, and transmitting data," a process and function commonly performed by humans.  (Def.'s Mem. Supp. Mot. Dismiss at 6, ECF No. 17.)  CalAmp urges the Court to reject the contention that simply because the information monitoring is performed remotely using a network does not make conventional human activity patentable.

In their view, Orbcomm is simply tying an abstract idea to a general purpose computer or the Internet.  (*Id.* at 7.)  CalAmp points out that the claims of the '724 patent "call for only a generic 'transponder,' 'satellite,' 'ground station,' and unspecified processing equipment with no particular improvements to any of this equipment claimed."  (*Id.* at 11.)  Furthermore, the '724 patent offers nothing transformative to the functionality of conventional software or computer equipment.  (*Id.* at 10.)  For the same reason, CalAmp maintains that Orbcomm cannot rely upon the machine-or-transformation test as a safe sanctuary.  This test enables patentability of an invention if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski v. Kappos*, 561 U.S. 593, 600 (2010) (citation omitted).  In Orbcomm's view, the '724 system is still in essence an unadorned computer.  Consequently, none of the features of the '724 patent add an inventive concept necessary to allow an abstract idea to be patentable.

In their response, Orbcomm urges the Court to focus on the purpose of the patent-in-suit to determine whether it is directed to solving a particular problem or improving

technology in a given field. According to Orbcomm, the concept of improvement is the operative factor. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Orbcomm notes that the Court in *Enfish* found the technology similar to that at issue patent eligible "noting that the patent was directed to improving the operation of a computer, not [simply] computerization of a well-known business practice." (Pl.'s Mem. Opp'n Mot. Dismiss at 4, ECF No. 21.) "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM, supra*, at *6.

Orbcomm argues that the concept embraced by the '724 patent is an improvement of existing technology and hence more than just an abstract idea operating on a computerized platform. "The satellite communication system and GPS receivers are particular machines, not generic computers" because the '724 patent is tied to a particular apparatus, namely "a transponder-satellite communications link." (Pl.'s Mem. Opp'n Mot. Dismiss at 17.) Citing *Ultramerical, Inc. v. Hulu, LLC*, Orbcomm argues that the '724 patent satisfies the machine-or-transformation test. 772 F.3d 709, 716 (Fed. Cir. 2014).[2]

---

[2] In their Response to Orbcomm's Notice of Supplemental Authority, CalAmp provides the Court with the recent decision in *Asghari-Kamrani v. United Servs. Automobile Ass'n*, No. 2:15cv478–RGD (E.D. Va. July 18, 2016) (ECF No. 25-1). In *Asghari-Kamrani*, the district court found a patent described as a "system and method . . . for centralized identification and authentication of users and their transactions to increase security in e-commerce" to be invalid. *Id.* at 2. The Court tersely concluded that "[c]onsidered as an ordered combination, the claim elements do not add anything inventive to the abstract concept underlying them. They simply instruct a generic computer or computers to verify the identity of a participant to a transaction

At this stage of the proceedings, the Court's analysis is circumscribed to the well-pleaded facts in the Complaint and the relevant patents appended as exhibits. This Court has not had the benefit of any form of expert testimony amplifying the language and claims of the patents-in-suit enabling the Court to determine more definitively whether the patents at issue are truly a technological improvement over prior art. From the present narrow perspective, it appears that the '724 patent teaches an innovative construct—involving satellite communication receivers and GPS receivers—beyond a simple generic computer.[3]  While admittedly a close issue, CalAmp has not convinced the Court that the '724 patent is invalid.

The '001 patent also pertains to the tracking of geographically dispersed fleets of construction vehicles and equipment using satellite positioning, wireless data communication, and Internet facilities. This patent appears to provide a method of "integrating . . . the simultaneous displaying of satellite position-derived location information of the maintenance vehicles servicing said equipment at the respective equipment sites through real-time tracking using said resources and processing . . . ." (Compl., Ex. C., Col. 5.) CalAmp again characterizes the '001 patent as simply collecting and displaying data, an unpatentable generic computer function. CalAmp argues that the only difference between the '724 patent and the '001 patent is that the latter discloses integrating data for multiple sources in a single display—again, a

---

using a randomly generated code." *Id.* at 11–12. The immediate patents appear to involve more innovation.

[3] The Court does not read that the '724 patent as casting the wide net suggested by CalAmp. The specific applications described in the patent and discussed in Orbcomm's Memorandum in Opposition seem to preclude any preemptive effect.

common human function. "[S]toring and querying information in a database, and building reports based on that information, is one of the most basic functions of a database system." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 823 (E.D. Va. 2014). Consequently, CalAmp argues that the '001 patent is devoid of innovative elements and therefore an abstract idea which is unpatentable.

Orbcomm again rejoins that the '001 patent clearly improves existing vehicle tracking systems. According to Orbcomm, the innovative element is the placement of a GPS receiver onboard each maintenance vehicle enabling the system to be aided by satellite positioning. In their view, the addition of the GPS receiver transforms the system "into a different state or thing." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) (citations omitted). Moreover, Orbcomm asserts that the limitations placed on the scope of the claims, namely to systems for remotely monitoring the location and condition of construction vehicles using satellite positioning, imposes "meaningful limits on the claim's scope to impart patent-eligibility." *Id.* (citation omitted).

Based upon the descriptive information provided in the Complaint, augmented by the patent, it would appear that the system described in the '001 patent meets the criteria of Section 101 at this stage and is facially patentable.

The parties' positions on the other three patents at issue closely track the debate on the '724 and '001 patents. The '686 patent claims a system for remotely tracking and monitoring certain types of vehicles and remotely activating certain accessories, such as doors, alarms, and ignitions. (Compl. ¶ 34.) According to Orbcomm, the '686 patent

10

enhances existing technology. "The invention of the '686 Patent improved the prior art systems by moving the intelligence from the units themselves to the 'central database' and other backend systems." (Pl.'s Mem. Opp'n Mot. Dismiss at 10.)

CalAmp disagrees. Aside from the conventional functions of gathering, storing, processing, and transmitting data, the "only additional concept covered by the '686 patent," according to CalAmp, "is sending control instructions back to the target vehicles." (Def.'s Mem. Supp. Mot. Dismiss at 16.) Rather than functional improvement, the '686 patent merely embraces "the abstract idea of controlling existing physical processes remotely." (*Id.*)

Orbcomm contends that the '686 patent uses a non-conventional combination of elements, employing customized devices on each target, satisfying the requirements of *Alice*. (Pl.'s Mem. Opp'n Mot. Dismiss at 11.) Orbcomm also points out that the apparatus claims of the '686 patent are tied to a particular machine, specifically non-generic wireless communication units. These units are described as containing a global position sensor and "a selectable port wiring interface." (*Id.* at 12.) These special features are sufficient at this stage to defeat a claim of invalidity. *See SiRF*, 601 F.3d at 1323. Its limited application to a specific configuration would appear to foreclose CalAmp's assertion of field preemption.

On similar grounds, CalAmp questions the validity of the '626 patent. Comparing their claims to those embraced in the '724, '001, and '686 patents, they again maintain that it describes nothing more than the process of gathering, storing, processing, and transmitting information. The processing of data, claimed by the '626 patent, according

11

to CalAmp, is simply the translation of messages between two formats "an abstract, conventional activity." (Pl.'s Mem. Opp'n Mot. Dismiss at 19.) Therefore, they suggest that the Court apply the same analysis as in the '724, '001, and '686 patents. The process, in their view, is akin to the translation of a message from one language to another. Succinctly captured, CalAmp contends that "the patent is not directed to any novel message formats or methods of translating between them; it is merely directed to the abstract idea of translating messages, implemented using generic equipment and in the particular field of freight management." (Def.'s Mem. Supp. Mot. Dismiss at 20.) Moreover, they point out that the mere fact that the invention has features allowing physical control in no way changes the analysis.

According to CalAmp, the '626 patent also founders on the shoals of step two of the *Alice* test. It fails to transform an abstract idea into a patentable invention. "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of [*Alice* step two], it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC*, 776 F.3d at 1347–48 (internal quotation marks and citations omitted). In assessing patent eligibility, a reviewing court must consider the elements of the claim, both individually and as an ordered combination to determine whether it teaches an "inventive concept," something "sufficient to ensure that the patent in practice amounts to significantly more than [an abstract idea] itself." *Mayo*, 132 S. Ct. at 1294. Of course, the boundary between abstract and concrete ideas is often difficult to

define. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1345 (Fed. Cir. 2015).

Orbcomm replies that the translation system described in the '626 patent easily satisfies the first step of the *Alice* test. Relying on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), Orbcomm contends that the method of translating messages enabling two different kinds of machines to communicate with each other is supported by the Federal Circuit's ruling in *DDR Holdings* as applied by the district court in *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015).

The claims at issue in *DDR Holdings* involved both a computer and the Internet. However, the Federal Circuit noted that

> these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*DDR Holdings*, 773 F.3d at 1257.

In *Messaging Gateway Solutions*, the district court observed that "[i]f one looks at almost any patent from far enough away, it could arguably claim an abstract idea." 2015 WL 1744343 at *5. The patent at issue in *Messaging Gateway Solutions* described "[a] method of using a computer system to facilitate two-way communication between a mobile device and an Internet server." *Id.* at *2. The court concluded, the patent

> specifies how an interaction between a mobile phone and a computer is manipulated in order to achieve a desired result which overrides conventional practice. Conventionally, phones could not send SMS text

13

> messages to computers. The claimed method manipulates that interaction
> by translating the message in a way that allows a computer to receive and
> understand the message.

*Id.* at *5.

> Similarly, Orbcomm characterizes the '626 patent as a system that allows

> monitoring devices on freight assets to detect an event or condition
> associated with freight and to communicate via multiple messaging
> protocols (including satellite, cellular, and wireless) with a central wireless
> monitoring system that then translates these messages into industry
> standard freight messages that can be understood by computers used by
> companies in the freight business.

(Pl.'s Mem. Opp'n Mot. Dismiss at 19–20.) Orbcomm stresses that the '626 patent

involves more than merely translating electronic messages. "[T]he invention provides for

sending command messages to change the condition of a freight asset based on

specialized technological aspects of a freight information system." (*Id.* at 20.)

These conditions include: temperature, location, speed, direction of movement, vibration,

load, humidity, ambient gas, illumination, radiation, and time of arrival or departure.

(*Id.*)

As this Court has repeatedly stressed, the analytical framework at this stage is one-

dimensional—confined to the well-pleaded facts in the Complaint and exhibits—here, the

patents. Therefore, without the benefit of expert amplification, the Court must rely on the

record at hand. From that narrow perspective, it appears that the '626 patent describes

patent-eligible subject matter and, while debatable, satisfies the requirements of Section

101 of the Patent Act. Based on the specialized monitoring features described in Claim 4

14

of the '626 patent, coupled with the format translation, the Complaint appears to describe an innovative technological advancement.

CalAmp challenges the '150 patent on the same grounds as the other four discussed above. The '150 patent depicts a "method of and apparatus for differentiating and indicating engine idling periods with little fuel consumption, and periods of engine working under load and substantially consuming fuel, . . . through monitoring the frequencies of the engine alternator corresponding to the engine speed over time . . . ." (Compl., Ex. D, Col. 1.) CalAmp's challenge again flows from their contention that the broad concept of correlating or matching data, which is the essence of the '150 patent, is itself an abstract idea. In their view, simply correlating data does not add an inventive concept to the other abstract elements. Therefore, the '150 patent fails to satisfy *Alice* step two and lacks the essential innovative component necessary to pass the machine-or-transformation test. (Def.'s Mem. Supp. Mot. Dismiss at 21–22.)

Orbcomm counters that the '150 patent describes a non-conventional system for gauging the time of engine operation. Orbcomm contends that traditional systems measure engine run time based upon fuel consumption. The '150 patent monitors the frequencies of the engine alternator corresponding to the engine's speed. Because this innovative technology allegedly improves the measurement of fuel consumption, it would appear at this stage to be arguably patent eligible.

The final segment of CalAmp's Motion to Dismiss challenges the plausibility of Orbcomm's infringement claims from two angles. This facet of CalAmp's Motion is reviewed under the familiar standard for 12(b)(6) motions discussed *infra*. Orbcomm

15

first questions whether the factual underpinnings of the Complaint support a plausible allegation that the accused devices "actually implement the claimed abstract ideas." (Def.'s Mem. Supp. Mot. Dismiss at 22.) Secondly, CalAmp maintains that the Complaint fails to plausibly demonstrate that "the many generic computer components that are present in the asserted claims of all of the patents-in-suit are actually present in CalAmp's devices that are accused of infringing the various claims." (*Id.*)

CalAmp acknowledges that patent complaints are reviewed under the pleading standards articulated in Federal Rule of Civil Procedure 8(a), which requires a viable claim to relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Two Supreme Court cases stake out the boundaries of the Rule 8(a) requirements. In *Iqbal*, the Court provided instructive guidance. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 556 U.S. at 678 (citations omitted). The Court in *Iqbal* further counseled that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, as the Fourth Circuit noted in *Francis v. Giacomelli*, while *Iqbal* does not require "hyper-technical pleading," it requires more than a simple allegation of entitlement to relief. 588 F.3d 186, 193 (4th Cir. 2009); *see also Macronix Int'l Co., Ltd.*

16

*v. Spansion Inc.*, 4 F. Supp. 3d 797, 801 (E.D. Va. 2014). In their Reply memorandum,

CalAmp seems to suggest that a well-pleaded patent infringement complaint should be

crafted as the "equivalent of a short and plain claim chart as part of the initial pleading."

(Def.'s Reply Mem. Supp. Mot. Dismiss at 18) (citing *dicta* in *Macronix*, 4 F. Supp. 3d at

803).) The Court in *Macronix* encouraged counsel to employ a claims chart type

analysis in preparation for drafting a succinct but sufficient complaint. 4 F. Supp. 3d at

803. While greater specificity may be aspirational, *Macronix* acknowledges that the

plausibility requirements of *Twombly* and *Iqbal* govern the sufficiency of complaints in

patent infringement cases.

      In their response, Orbcomm draws the Court's attention to the teachings of the

Supreme Court in *Twombly*, the second informative case interpreting the Rule 8(a)

standard. "Asking for plausible grounds to infer [that a viable infringement claim exists]

does not impose a probability requirement at the pleading stage; it simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of

[such infringement]." 550 U.S. at 556. The Court in *Twombly* further noted that "of

course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*

(citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

      With respect to each of the allegedly infringed patents, the Complaint specifically

identifies the claims directly, indirectly, and contributorily infringed, along with those

induced by third parties. The Complaint specifies in detail the accused devices produced

by CalAmp. (Compl. ¶¶ 73, 98, 122, 137, 150.) Furthermore, the Complaint appears to

comparatively particularize the similarities of functions and features of both parties'

relevant patents and related systems.  Drawing from this information base, Orbcomm

explains their theory as to each species of infringement in sufficient detail to demonstrate

a plausible entitlement to relief.  The Complaint is far from the type of "naked assertions

of wrongdoing" rejected by the Fourth Circuit in *Francis*.  588 F.3d at 193.

Patent litigation involves complex subject matter.  This Court is not convinced that

the level of granular particularity suggested by CalAmp is necessary to survive initial

Rule 12(b)(6) scrutiny.  Pursuant to this Court's forthcoming Model Scheduling Time

Table for Patent Infringement Cases, each side will be required to submit a more detailed

claims chart.  Based on the present record, CalAmp's Motion to Dismiss will be denied.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____

Henry E. Hudson
United States District Judge

Date: July 22 2016
Richmond, VA