IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ORBCOMM INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:16CV208–HEH |
| | ) |
| CALAMP CORP., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
(Plaintiff's Motion to Dismiss Defendant's Inequitable Conduct Counterclaim)

THIS MATTER is before the Court on Plaintiff ORBCOMM, Inc.'s ("Plaintiff") Motion to Dismiss Defendant CalAmp Corp.'s ("Defendant") Counterclaim and to Strike Its Inequitable Conduct Defense (ECF No. 38), filed on August 9, 2016. On July 19, 2016, Defendant filed its First Amended Answer (ECF No. 27) to this patent infringement suit. Defendant's First Amended Answer included an affirmative defense and a counterclaim both alleging that one of the patents-in-suit is unenforceable because of Plaintiff's inequitable conduct. Plaintiff has moved to dismiss the inequitable conduct counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike the inequitable conduct defense pursuant to Federal Rule of Civil Procedure 12(f). Each side has filed memoranda supporting their respective positions. For the reasons set forth below, the Court will deny Plaintiff's Motion.

## I. BACKGROUND

This lawsuit involves five separate but interrelated patents. Only one of them, U.S. Patent No. 6,611,686 ("the '686 patent"), is the subject of the inequitable conduct allegations.

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the claimant's well-pleaded allegations to be true and views all facts in the light most favorable to it. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Defendant's Counterclaim. However, the Court may also consider documents attached to the counterclaim, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Viewed through this lens, the facts are as follows.

In 2014, the '686 patent was owned by Joseph Smith ("Smith"), the patent's named inventor. (Am. Answer ¶ 178, ECF No. 27.) On June 3, 2014, Smith filed separate lawsuits in the Eastern District of Texas against Honeywell International, Inc. and ORBCOMM, Inc., alleging infringement of the '686 patent by both Honeywell and ORBCOMM. (*Id.* ¶¶ 178–79.) On July 14, 2014, Smith filed yet another action in the Eastern District of Texas, this time against SkyBitz, Inc., again alleging infringement of the '686 patent. (*Id.* ¶ 180.) On October 13, 2014, the district court consolidated the Honeywell and SkyBitz cases, designating Honeywell as the lead case ("*Honeywell* case"). (*Id.* ¶ 181.)

2

On June 19, 2015, the district court issued a claim construction memorandum opinion and order ("*Honeywell* Claim Construction Order") in the *Honeywell* case. (*Id.* ¶ 184.) In the *Honeywell* Claim Construction Order, the court concluded that the patent examiner had made an obvious clerical error in the '686 patent that could be corrected by the court. (*Id.*) Specifically, the court construed the term "inputs to be controlled" in claims 15 and 48 of the '686 patent to mean "inputs to be monitored." (*Id.*) SkyBitz moved for reconsideration of this construction, arguing that the '686 patent did not contain a clerical error and that the district court did not have the authority to change the claim language. (*Id.* ¶¶185–86.)

On August 3, 2015, the district court consolidated the *Honeywell* case and the ORBCOMM case, designating ORBCOMM as the lead case ("*ORBCOMM* case"). (*Id.* ¶ 187). The court vacated its *Honeywell* Claim Construction Order so that claim construction could start over in the newly consolidated case. (*Id.* Ex. 3, at 2.)[1] The court thus denied SkyBitz's motion for reconsideration as moot. (*Id.* Ex. 3, at 3.) At the time of the *ORBCOMM* case consolidation, and throughout the remainder of the Eastern District of Texas litigation, Herbert Kerner ("Kerner") represented ORBCOMM. (*Id.* ¶183.)

In its claim construction brief for the newly consolidated case, ORBCOMM stated that it had "decided to adopt the position of Skybitz" with respect to the term "inputs to be controlled." (*Id.* ¶ 188.) This was a change in ORBCOMM's position. Before the consolidation, ORBCOMM and Smith had agreed to the court's construction from the

---

[1] All citations to specific pages of exhibits reference the overall page within the ECF entry, not to the exhibits' internal pagination.

3

*Honeywell* case. (*Id.* Ex.4, at 8 n.1.) In its claim construction brief, ORBCOMM also argued that there was "no basis to 'correct' the term at issue." (*Id.* ¶ 189.) ORBCOMM asserted that "inputs to be controlled" did not meet the requirements for judicial correction because there was not an error obvious on the face of the patent. (*Id.* Ex. 4, at 13.) ORBCOMM maintained that it was improper for the court to rely on the patent's prosecution history in making a correction to the claim language. (*Id.* Ex. 4, at 14, 17 n.2.) As evidence of there being no obvious error on the face of the '686 patent, ORBCOMM pointed to Smith's arguments in the *Honeywell* claim construction where he, as the inventor, denied any error in the "inputs to be controlled" language. (*Id.* ¶ 189). ORBCOMM also went on to argue that, because there was no obvious error on the face of the patent, the term "inputs to be controlled" was indefinite, rendering claims 15 and 48 invalid. (*Id.* Ex. 4, at 17–20.)

The district court adopted ORBCOMM's argument. It issued a claim construction memorandum opinion and order ("*ORBCOMM* Claim Construction Order") in the consolidated case on September 10, 2015. (*Id.* ¶ 190.) The court found that "the error is not evident from the face of the patent," and thus the court "does not have the authority to correct the patent in such circumstances." (*Id.* Ex. 5, at 14). The court further found that "said inputs to be controlled" was indefinite, rendering claims 15 and 48 of the '686 patent invalid. (*Id.*) At the heart of the court's analysis was the fact that throughout both the *Honeywell* and *ORBCOMM* claim construction processes Smith "argue[d] for an alternative construction of the phrase 'input to be controlled.'" (*Id.* ¶ 190.)

4

On October 13, 2015, the district court granted a stipulated motion to dismiss the *ORBCOMM* case. (*Id.* ¶ 191.) In conjunction with the lawsuit being dismissed, ORBCOMM became the owner of the '686 patent. (*Id.* ¶ 192.)

On November 4, 2015, Kerner, representing ORBCOMM, the new patent owner, petitioned the United States Patent and Trademark Office ("PTO") seeking to change the "inputs to be controlled" language of the '686 patent—the same language subject to the previous litigation. (*Id.* at 194). Kerner sought an expedited issuance of certificate of correction pursuant to Manual of Patent Examining Procedure ("MPEP") § 1480.01. (*Id.* at 195). To demonstrate that the "inputs to be controlled" language was an error attributable solely to the PTO, Kerner only included the patent examiner's amendment to the '686 patent language dated December 13, 2010, and the district court's vacated *Honeywell* Claim Construction Order. (*See id.* Ex. 6.) Kerner did not disclose, however, that the *Honeywell* Claim Construction Order had been vacated, nor did he provide any other documents from the *Honeywell* or *ORBCOMM* litigation. (*See id.*) The PTO granted Kerner's request for correction on December 21, 2015. (*Id.* ¶ 194.)

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A reviewing court must consider the well-pleaded allegations as true and view the complaint in the light most favorable to the claimant; legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Federal Rules of Civil

5

Procedure generally "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, the defense of inequitable conduct in patent cases triggers the more stringent pleading requirements of Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Id.* at 1318.

Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To sufficiently plead inequitable conduct under Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. These elements must be supported by "particularized factual bases"; pleadings that merely recite "the substantive elements of inequitable conduct" do not pass muster. *Id.* at 1326–27. In addition, although the text of Rule 9(b) permits general assertions in support of mental conditions like knowledge or intent, a pleading of inequitable conduct must include sufficient facts "from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. A "reasonable inference," for the purposes of Rule 9(b), "is one that is

6

plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5 (citations omitted).

Under Rule 12(f), a district court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court's decision on such a motion is discretionary. *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F.App'x 239, 246 (4th Cir. 2007) (citations omitted). However, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)).

### III. DISCUSSION

Plaintiff moves to dismiss Defendant's inequitable conduct counterclaim pursuant to Rule 12(b)(6) and to strike Defendant's inequitable conduct defense pursuant to Rule 12(f).

Inequitable conduct, the "atomic bomb" of patent law, is an equitable defense to patent infringement that can bar the enforcement of an otherwise valid patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285, 1288 (Fed. Cir. 2011). Because it can have such draconian consequences, the accused infringer faces a high bar to prevail on a claim of inequitable conduct. First, he must prove that the patent holder acted with the specific intent to deceive the PTO. *Id.* at 1290. Next, the claimant must prove but-for materiality—in other words, but for the patentee's inequitable

7

conduct, the PTO would not have issued the patent. *Id.* at 1291. However, a narrow exception to the but-for materiality requirement exists for cases where the patentee has engaged in affirmative egregious misconduct. *Id.* at 1292. Affirmative egregious misconduct, such as filing an unmistakably false affidavit, is deemed to be material. *Id.*

Plaintiff maintains that Defendant's pleadings are insufficient to allege both specific intent and materiality. However, Defendant has met its burden at this stage by pleading facts that allow the court to "reasonably infer that [Kerner] acted with the requisite state of mind" and identifying "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327–28.

### a. Specific Intent

First, Defendant has sufficiently pleaded specific intent. While Rule 9(b) permits "'knowledge' and 'intent' to be averred generally," inequitable conduct allegations must include sufficient underlying facts "from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

Defendant's inequitable conduct allegations include sufficient facts for this Court to reasonably infer that Kerner knew of the withheld material information or the falsity of the material misrepresentation. Kerner represented ORBCOMM throughout the Eastern District of Texas '686 patent litigation. He was certainly aware of the motions and memoranda filed as well as the court's orders. Moreover, the court's *ORBCOMM* Claim

8

Construction Order adopted many of the arguments that ORBCOMM itself had made in its memorandum bearing Kerner's name. (*See* Am. Answer Ex. 5, ECF No. 27.) As ORBCOMM's counsel, Kerner would have understood the disparity between the *Honeywell* Claim Construction Order, which he provided to the PTO, and the *ORBCOMM* Claim Construction Order accepting ORBCOMM's arguments. Therefore, this Court can reasonably infer Kerner's knowledge.

Defendant has also pleaded sufficient facts for this Court to draw the reasonable inference of Kerner's intent to deceive the PTO. The expedited process that Kerner used to correct the '686 patent is only applicable for errors attributable to the PTO. MPEP § 1480.01 (9th ed. Rev. 7, Nov. 2015). This type of correction is done expeditiously, without reference to the patent file, but is only permitted where the request is "accompanied by documentation that unequivocally supports the patentee's assertion." *Id.*

In his request for correction, Kerner attached the district court's vacated *Honeywell* Claim Construction Order concluding that the patent examiner had made an obvious clerical error. (Am. Answer Ex. 6, ECF No. 27.) Kerner did not, however, indicate that the *Honeywell* Claim Construction Order had been vacated, nor did he attach any of the other '686 patent litigation documents. (*Id.*) In particular, in the *ORBCOMM* Claim Construction Order, the district court concluded that the claims did not include an obvious clerical error, largely based on the fact that Smith, the inventor, made two mutually exclusive arguments. (*Id.* Ex. 5, at 13.) Smith first asserted that "inputs to be controlled" was a clerical error attributed to the PTO. (*Id.* Ex. 5, at 9–10.) But, in the

9

alternative, Smith argued that the court need not find that the patent contain a clerical error because it could construe the disputed language to refer to definition data. (*Id.* Ex. 5, at 9.) These conflicting arguments compelled the court's determination that the error was not evident on the face of the patent. (*Id.* Ex. 5, at 13.)

If Kerner had included a more complete record of the '686 patent litigation, it would not have "unequivocally support[ed]" his assertion that the error was attributable to the PTO. In fact, it would have raised a question about whether there was an error in the patent at all. Therefore, when accepting Defendant's well-pleaded allegations as true, this Court can draw a reasonable inference of Kerner's specific intent to mislead the PTO.

### b. Materiality

Likewise, Defendant has sufficiently pleaded a material misrepresentation or omission. Rule 9(b) requires the pleading to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328.

First, Defendant's counterclaim identifies a specific individual, Kerner, who allegedly engaged in inequitable conduct. (*See* Am. Answer ¶ 183, ECF No. 27.) Thus, the pleading sufficiently identifies the "who" of the material misrepresentation or omission. Defendant has also clearly identified the "what," "when," and "where" by detailing the '686 patent litigation history and pointing to specific allegedly material documents. (*Id.* ¶¶ 178–91.) Finally, Defendant has sufficiently pleaded "how" a material misrepresentation and omission occurred. Defendant has outlined how Kerner

10

potentially mislead the PTO by providing only the vacated *Honeywell* Claim Construction Order and how that omission was material to the PTO's decision to grant the certificate of correction. (*Id.* ¶¶ 193–208.) Therefore, Defendant has pleaded sufficient facts to identify a material misrepresentation or omission.

Having sufficiently pleaded both specific intent and materiality, Defendant's inequitable conduct counterclaim will survive this stage of the proceedings. Similarly, because Defendant has survived the Rule 12(b)(6) stage by meeting the heightened Rule 9(b) pleading standard for its counterclaim, its defense of inequitable conduct is also sufficient to survive Rule 12(f) analysis.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion to Dismiss Defendant's Inequitable Conduct Counterclaim and Strike Its Inequitable Conduct Defense will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                             /s/
                                          Henry E. Hudson
                                          United States District Judge

Date: Sept. 9, 2016
Richmond, Virginia