IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ORBCOMM INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:16CV208–HEH |
| | ) |
| CALAMP CORP., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
(Defendant's Motion for Reconsideration)

THIS MATTER is before the Court on Defendant CalAmp Corp.'s ("Defendant") Motion for Reconsideration of Denial of Motion to Dismiss, filed on August 4, 2016. (ECF No. 35.) On May 27, 2016, Defendant moved to dismiss this patent infringement suit filed by Plaintiff ORBCOMM, Inc. ("Plaintiff"). (ECF No. 16.) On July 22, 2016, the Court denied Defendant's Motion to Dismiss, finding that all five patents at issue constitute patent-eligible subject matter pursuant to 35 U.S.C. § 101. (ECF Nos. 29, 30.) In its Motion for Reconsideration, Defendant relies on a case recently decided by the United States Court of Appeals for the Federal Circuit, *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). Each side has filed memoranda supporting their respective positions. The Court heard oral argument on October 13, 2016. In light of *Electric Power Group*, and for the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion for Reconsideration.

## I. BACKGROUND

This lawsuit concerns five separate but interrelated patents. They all involve machine-to-machine communication platforms designed for tracking and monitoring the location and status of widely dispersed fleet vehicles and related mobile assets. The specific patents-in-suit include the following:

1. U.S. Patent No. 6,292,724 ("the '724 Patent") (entitled "Method Of And System And Apparatus For Remotely Monitoring The Location, Status, Utilization And Condition Of Widely Geographically [Dispersed] Fleets of Vehicular Construction Equipment And The Like And Providing And Displaying Such Information") (Compl. ¶ 21, ECF No. 1);

2. U.S. Patent No. 6,611,686 ("the '686 Patent") (entitled "Tracking Control And Logistics System And Method") (Compl. ¶ 27);

3. U.S. Patent No. 6,651,001 ("the '001 Patent") (entitled "Method Of And System And Apparatus For Integrating Maintenance Vehicle And Service Personnel Tracking Information With The Remote Monitoring Of The Location, Status, Utilization And Condition Of Widely Geographically Dispersed Fleets Of Vehicular Construction Equipment And The Like To Be Maintained, And Providing And Displaying Together Both Construction And Maintenance Vehicle Information") (Compl. ¶ 38);

4. U.S. Patent No. 6,735,150 ("the '150 Patent") (entitled "Method Of And Apparatus For Distinguishing Engine Idling And Working Hours") (Compl. ¶ 43); and

2

5. U.S. Patent No. 8,855,626 ("the '626 Patent") (entitled "Wireless Control For Creation Of, And Command Response To, Standard Freight Shipment Messages") (Compl. ¶ 51).

Defendant maintains, as it did in its original Motion to Dismiss, that all five of the patents-in-suit are invalid because they seek to patent abstract ideas, in contravention of 35 U.S.C. § 101.

## II. LEGAL STANDARD

The denial of Defendant's Rule (12)(b)(6) Motion to Dismiss was an interlocutory order. *See Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). The proper vehicle for requesting reconsideration of an interlocutory order is Federal Rule of Civil Procedure 54(b).[1] *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991). Interlocutory orders are subject to reconsideration by the issuing court any time prior to the entry of a final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).

It is clear that "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b). *Id.* at 514. However, the Fourth Circuit has declined to "thoroughly express [its] views on the interplay of Rules 60, 59 and 54." *Fayetteville,*

---

[1] Rule 54(b) states in pertinent part:
    [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.
Fed. R. Civ. P. 54(b).

936 F.2d at 1472. Typically, courts do not depart from a previous ruling unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir.1988)); *see also S. Coal Corp. v. IEG Pty, Ltd*, No. 2:14CV617, 2016 WL 393954, at *1 (E.D. Va. Jan. 29, 2016); *Al Shimari v. CACI Int'l, Inc.*, 933 F. Supp. 2d 793, 798 (E.D. Va. 2013). It is with this framework in mind that the Court reconsiders its denial of Defendant's Motion to Dismiss.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Patent eligibility under 35 U.S.C. § 101 is an issue of law; as such, it is suitable for resolution on a motion to dismiss. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). The Court is permitted to make a patent eligibility determination at the Rule 12(b)(6) stage, so long as it has a "full understanding of the basic character of the claimed subject matter." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). In considering such a motion, the Complaint and patents-in-suit must be viewed in the light most favorable to the plaintiff. *Id.* As with all Rule 12(b)(6) motions, the Court's analysis is "limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *OIP Techs., Inc. v. Amazon.com,*

*Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (applying Federal Circuit and Ninth Circuit law).

### III. DISCUSSION

Section 101 of the Patent Act describes the subject matter eligible for patent protection. It provides: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Section 101 also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). However, a patent is not rendered ineligible "simply because it involves an abstract concept." *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). "[A]pplication[s] of such concepts 'to a new and useful end' . . . remain eligible for patent protection." *Id.* (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In *Alice*, the Supreme Court reiterated the two-step analytical framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012)). The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the analysis moves to the second step, asking "what else is there in the claims before us?" *Id.* The second step is a search for an "inventive

concept"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 132 S. Ct. at 1294 (citations omitted).

In *Electric Power Group*, the impetus for this Motion for Reconsideration, the Federal Circuit held that the patents in that case failed to meet the eligibility requirements of §101. *Elec. Power Grp.*, 830 F.3d at 1356. Those patents all claimed "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." *Id.* at 1351. At the first step of the *Alice* analysis, the court determined that the patents were "'directed to' a patent-ineligible concept" because the claims focused merely on collecting, analyzing, and displaying information. *Id.* at 1353. Proceeding to step two, the court determined that the patents contained no inventive concept to remove the claims from the class of ineligible subject matter. *Id.* at 1354. The patents were invalid because the claims merely required the collection, analysis, and display of information "without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Id.* at 1351. Importantly, the court determined that the patents were not saved by the inclusion of language "enumerating types of information and information sources available within the power-grid environment." *Id.* at 1355.

This Court's reconsideration of the validity of the five patents-in-suit is informed by developments in the law brought about by *Electric Power Group*. Through that lens, each patent will be discussed in turn.

### a. The '626 Patent

The Court's initial determination that the '626 Patent comported with §101 relied primarily on "the specialized monitoring features described in Claim 4 . . . coupled with the format translation." (Op. Den. Def.'s Mot. Dismiss 14–15, ECF No. 29.) In the Court's view, these factors transformed the '626 Patent from an abstract idea into "an innovative technological advancement." (*Id.* at 15.) However, in *Electric Power Group,* the Federal Circuit explicitly stated that "merely selecting information, by content or by source, for collection analysis and display does nothing" to elevate a patent beyond a mere abstract idea. *Elec. Power Grp.*, 830 F.3d at 1355. The teachings of *Electric Power Group* squarely apply to the '626 Patent and are contrary to this Court's prior analysis. As a result, the determination that the '626 Patent is patent-eligible rests on infirm terrain. With this in mind, the Court is now constrained to revisit the validity of the '626 Patent and reason whether it is an unpatentable abstract idea.

Claim 1, the only independent claim of the '626 Patent, states:

> A centralized freight asset monitoring system comprising:
>   a first receiver comprising an interface that inputs communication
>     signals, the receiver receiving in real time a plurality of wireless
>     messages, in a plurality of differing first formats that are not an
>     industry standard freight message format and are encoded particularly
>     for bandwidth restrictions of wireless communication links over which
>     the wireless messages are sent, from a plurality of intelligent electronic
>     devices associated with a plurality of freight assets, the wireless
>     messages containing information of a monitored event or condition of
>     the respective freight asset, wherein the receiver stores the information
>     in a memory that holds a database of the wireless monitoring system;
>   a translator of the wireless monitoring system that translates in real time,
>     utilizing a processor, the received wireless messages based upon the
>     receipt in the respective first format into a message in a second format

        that is an industry standard freight message format used in an information system of a user of the freight asset;

    a transmitter comprising an interface over which the messages in the second format are transmitted for delivery into the user information system based upon the translation;

a second receiver comprising an interface via which a message is received from the user containing a first command message to change a condition of a first freight asset associated with a first of the intelligent electronic devices and a second command message to change a condition of second freight asset associated with a second of the intelligent electronic devices; and

a second transmitter comprising an interface that:

    responsive to receiving the first command message from the user, transmits, over the interface, the first command message to the first intelligent electronic device in the respective first format associated with the first intelligent electronic device; and

    responsive to receiving the second command message from the user, transmits, over the interface, the second command message to the second intelligent electronic device in the respective first format associated with the second intelligent electronic device that differs from the first format associated with the first intelligent electronic device.

'626 Patent col. 5 l. 22–col. 6 l. 7. Distilled to its essence, the '626 Patent claims a system that 1) receives wireless messages from a freight asset in a non-"industry standard freight message format"; 2) translates the wireless messages into an "industry standard freight message format"; 3) transmits the translated message to a user; and 4) allows the user to send a translated message back to the freight asset. Dependent Claims 2, 3, 4, and 7 add additional limitations regarding the system's memory storage functionality, the specific variables to be monitored, and the system's ability to simultaneously monitor multiple assets for multiple users.[2] Evaluating these claims within the two-step *Alice*

---

[2] Plaintiff has not alleged infringement of Claims 5, 6, 8, 9, 10 or 11. Therefore, the Court will not address the validity of those claims.

framework, and in light of *Electric Power*, the Court concludes that the '626 Patent constitutes unpatentable subject matter under §101.

### 1. Abstract Idea

Beginning at *Alice* step one, the claims at issue in the '626 Patent fall squarely into a well-recognized category of claims "directed to" abstract ideas. Specifically, the claims describe a process of gathering information and translating it between two or more incompatible formats. Simply stated, they are directed to the wholly abstract idea of translation.

The Federal Circuit explicitly recognizes that information is an intangible and that "collecting information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353. District courts have consistently held that the mere concept of translating information also constitutes an abstract idea. *See Improved Search LLC v. AOL Inc.*, No. 15-262-SLR, 2016 WL 1129213 at *9 (D. Del. Mar. 22, 2016) (finding patent capable of translating Internet searches and results between multiple languages was directed to abstract idea); *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. 14-612-RGA, 2015 WL 5156526 at *3 (D. Del. Sept. 2, 2015) (holding patent that translated between different computer formats for electronic delivery of messages was directed to abstract idea of translation); *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 WL 1744343 at *4 (D. Del. Apr. 5, 2015) (holding patent that translated messages between SMS text message format and Internet Protocol format was directed to abstract idea of translation); *Loyalty Conversion Sys. Corp. v. Am. Airlines,*

9

*Inc.*, 66 F.Supp.3d 829, 846 (E.D. Tex. Sept. 3, 2014) (finding technology for converting loyalty award points between multiple vendors was directed to abstract idea). Here, the '626 Patent is directed to the abstract idea of translation. Therefore, the Court's invalidity analysis must proceed to *Alice* step two.

### 2. Inventive Concept

Turning to the second stage of the *Alice* framework, the Court finds that the '626 Patent does not add the requisite inventive material to transform the patent into more than an attempt to claim dominion over an abstract idea.

Determining whether a patent contains an inventive concept requires an evaluation of the particular combination of elements claimed in the patent. The Supreme Court has been clear that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the [system] to a particular environment." *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010). Additionally, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. Most recently, the Federal Circuit, in *Electric Power Group*, has clarified that "enumerating types of information and information sources" will not turn an abstract idea into one that is patent-eligible. *Elec. Power Grp.* 830 F.3d at 1355.

In this case, the fact that the scope of the '626 Patent is limited to freight assets provides no inventive concept. Moreover, the '626 Patent does not require any components that could be considered an "advance over conventional computer and network technology." *Elec. Power Grp.*, 830 F.3d at 1351. Rather, the claims use only

10

generic components—"receiver," "electronic devices," "translator," "processor," "transmitter"—to describe how the abstract idea of translation is carried out. Additionally, while in its initial assessment of the '626 Patent, the Court expressly relied on "the specialized monitoring features described in Claim 4 of the '626 Patent, coupled with the format translation," (Op. Den. Def.'s Mot. Dismiss 14–15) *Electric Power Group* is clear that identifying parameters for monitoring does not constitute an inventive concept. Thus, the Court is left with "format translation" as the only putative means to satisfy the inventive concept requirement.

The Federal Circuit has established that an inventive concept can be found where "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Plaintiff urges the Court to find that translating wireless messages into an industry standard freight message format is just such a solution. (Pl's Mem. Opp. Def.'s Mot. Recons. 24–25, ECF. No. 46.) However, the claimed invention does not solve a problem deeply rooted in the context of "computer networks." The issue of incompatibility in communication has existed as long as language itself. Translation has always been the solution. The patent specifications indicate that the claimed system performs functions previously conducted by humans. '626 Patent col. 3 l. 34–21 (stating that the system "provides information that is normally derived from other sources (i.e. . . . human creation of events that occur under specific conditions)"). Where, in the past, humans would manually input information into standardized freight messages, this system merely automates that process. Reformatting

11

information does not solve a problem arising in the realm of computer networks and is not an inventive concept.

Plaintiff relies heavily on *Messaging Gateway Solutions*, a case from the United States District Court for the District of Delaware, to support its proposition that translating a wireless message into an industry standard freight message format is an inventive concept. The patent at issue in *Messaging Gateway Solutions* described "[a] method of using a computer system to facilitate two-way communication between a mobile device and an Internet server." *Messaging Gateway Sols.*, 2015 WL 1744343 at *2. However, the holding in *Messaging Gateway Solutions* can be distinguished from the instant invention. In *Messaging Gateway Solutions*, the court based its holding largely on the fact that the claims were "limited to SMS text messages between a mobile device and the Internet." *Id.* at *5–6. Plaintiff's claimed invention contains no such explicit limitation. Instead, it applies to "a plurality of wireless messages" and "industry standard freight messages." As written, the '626 Patent would preempt any method of translating any type of wireless message sent from a freight asset into any format considered to be an industry standard, regardless of how that industry standard may change.[3]

In this case, the claimed invention is much more akin to the challenged invention in *Novo Transforma*, wherein the invention generated a message in one media format, converted it to another format upon delivery, and provided the sender with a receipt upon

---

[3] Claim 9 of the '626 Patent purports to limit the patent to apply only where a wireless message is translated into one of two specific formats—Electronic Data Exchange (EDI) and Extensible Mark-up Language (XML). Plaintiff has not alleged infringement of Claim 9. Therefore, its validity is not in issue.

arrival. 2015 WL 5156526 at *3. The opinion in that case—authored by the same Judge who decided *Messaging Gateway Solutions*—distinguished *Messaging Gateway Solutions* by concluding that the *Nova Transforma* claims "merely recite[d] the pre-Internet practice of 'translation' performed over the Internet." *Id.* Similarly, the '626 Patent merely recites the existing practice of translation applied to wireless messages transmitted from freight assets.

As noted by the Federal Circuit, claims that do no "more than simply describe [the] abstract method" but instead merely recite "conventional steps, specified at a high level of generality," cannot pass muster under the second step of the *Alice* test. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715, 716 (Fed. Cir. 2014). At this level of generality, the '626 Patent is emblematic of the "essentially result-focused, functional character of claim language [that] has been a frequent feature of claims held ineligible under §101." *Elec. Power Grp.*, 830 F.3d at 1356. Patents such as these are properly invalidated because they are "so result-focused, so functional, as to effectively cover any solution to [the] identified problem." *Id.* In this case, the '626 Patent does not provide enough inventive material to elevate it beyond an attempt to patent the abstract idea of translation. Therefore, even when viewed in the light most favorable to the Plaintiff, the '626 Patent is not patent-eligible subject matter under 35 U.S.C. §101.

### b. The '724, '686, and '001 Patents

Defendant also asserts that the '724, '686, and '001 Patents should be held invalid in light of *Electric Power Group*; because of their similarity, these patents will be addressed together. All three patents pertain to the remote monitoring of fleet vehicles.

Defendant maintains that its claims "are indistinguishable from the claims in *Electric Power*." (Def.'s Mem. Supp. Mot. Recons. 6, ECF No. 36.) However, the same reasoning that guided the Court's ruling in the original Motion to Dismiss compels the denial of the Motion for Reconsideration as to these three patents. Constrained by the four corners of the Complaint and patents, the Court is not convinced that these patents pertain to abstract ideas under *Alice* step one. However, even assuming that they do, when giving all reasonable inferences to Plaintiff at this Rule 12(b)(6) stage, they each appear to have an inventive concept sufficient to survive *Alice* step two.

*Electric Power Group* reiterates the well-established rule that use of "entirely conventional, generic technology" is itself not enough to establish an inventive concept. *Elec. Power Grp.*, 830 F.3d at 1356. However, finding that a patent fails *Alice* step two "requires more than recognizing that each claim element, by itself, was known in the art . . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Moreover, while "not the sole test for deciding whether an invention is a patent-eligible 'process,'" *Bilski v. Kappos*, 561 U.S. 593, 604 (2010), the "machine-or-transformation test" can be used to identify an inventive concept when "the use of a specific machine . . . impose[s] meaningful limits on the claim's scope." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010).

The claims of the '724, '686, and '001 Patents all refer to the use of GPS for determining the location of a remote target or satellite communications for

communicating that location information to a central processing station. *See* '724 Patent col. 6 l. 18–21 ("upon each equipment transponder receiving GPS signals, causing the transponder to transmit to the satellite information regarding its location"); '686 Patent col. 16 l. 10–11 ("comprising determining a global position"); '001 Patent col. 6 l. 4–6 ("upon receiving GPS signals, causing the transponder to transmit to the satellite, information as to its location"). When considering only the four corners of the Complaint and attached patents, the Court cannot find that the GPS and satellite communications claimed in these patents constitute mere conventional, generic technology. Nothing in *Electric Power Group* suggests the contrary. At this stage, without the benefit of expert testimony, tying the claims to specific machines—GPS and satellite communications—makes these patents facially valid. *See Bilski*, 561 U.S. at 1332 (finding that GPS is a specific machine imposing meaningful limits on the claim's scope to impart patent eligibility). Therefore, when affording all reasonable inferences to the Plaintiff, the Court cannot, as a matter of law, find that the '724, '686, and '001 Patents constitute ineligible subject matter under § 101.[4]

### c. The '150 Patent

As with the other patents-in-suit, Defendant also asserts that the '150 Patent is invalid in light of *Electric Power Group*. Defendant maintains that this patent contains no inventive concept because it merely correlates engine component frequency with fuel

---

[4] Defendant's arguments also integrate novelty and obviousness issues. These are separate questions for another day. *Cf. Parker v. Flook*, 437 U.S. 584, 588, 593 (1978) (stating that § 101 eligible subject matter analysis is independent of a determination of whether the invention is new or obvious).

15

consumption. (Def.'s Mem. Supp. Mot. Recons. 8.) However, *Electric Power Group* provides no new basis for the Court to reconsider its initial decision that the '150 Patent constitutes eligible subject matter at this Rule 12(b)(6) stage.

The '150 Patent claims a method of measuring engine run time by monitoring engine frequency. *See* '150 Patent col. 2 l. 48–55. The patent's background information indicates that this is an unconventional method of determining engine run time, something typically achieved by measuring fuel consumption. *See* '150 Patent col. 1 l. 23–24.

As with the '724, '686, and '001 Patents, even assuming that measuring engine run time is an abstract idea, the '150 Patent is saved at *Alice* step two. The Complaint and attached patent clearly indicate that using engine frequency to measure run time is innovative technology. While an alternator is certainly a known, conventional machine, monitoring alternator frequency to measure engine run time is a non-conventional and non-generic use for that machine. *See BASCOM*, 827 F.3d at 1350. Thus, viewed in the light most favorable to Plaintiff, the technology claimed in the '150 Patent is eligible subject matter under § 101.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Reconsideration will be granted as to the '626 Patent and denied as to the '724, '686, '001, and '150 Patents. The asserted claims of the '626 Patent will be invalidated as an unpatentable abstract idea.

16

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Oct. 19, 2016
Richmond, VA